No. 24-2407

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA

v.

SAFEHOUSE, a Pennsylvania nonprofit corporation; and JOSE BENITEZ, as President and Treasurer of Safehouse, *Appellants.*

———————

SAFEHOUSE, a Pennsylvania nonprofit corporation, *Appellant*

v.

U.S. DEPARTMENT OF JUSTICE; MERRICK B. GARLAND, in his official capacity as Attorney General of the United States; and JACQUELINE C. ROMERO, in her official capacity as U.S. Attorney for the Eastern District of Pennsylvania, *Appellees.*

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

## BRIEF FOR APPELLEES

Brian M. Boynton
  *Principal Deputy Assistant Attorney General*
Jacqueline Romero
  *United States Attorney*

Sarah Carroll
  (202) 514-4027
Lowell V. Sturgill Jr.
  (202) 514-3427
  *Attorneys, Civil Division*
  *Appellate Staff, Room 7527*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, N.W.*
  *Washington, D.C. 20530*

# TABLE OF CONTENTS

INTRODUCTION........................................................................................................1

STATEMENT OF JURISDICTION...........................................................................1

STATEMENT OF THE ISSUES................................................................................2

STATEMENT OF RELATED CASES AND PROCEEDINGS ......................…………..2

STATEMENT OF THE CASE ..................................................................................2

    A. Statutory Background ...................................................................................2

        1.  The Controlled Substances Act................................................................2

        2.  The Religious Freedom Restoration Act ................................................4

    B. Factual Background .......................................................................................5

    C. Procedural Background..................................................................................6

SUMMARY OF ARGUMENT...................................................................................9

STATEMENT OF THE STANDARD OF REVIEW ................................................10

ARGUMENT .............................................................................................................11

    I.       The District Court Correctly Dismissed Safehouse's
            Counterclaims.......................................................................................11

        A. The Court Correctly Dismissed Safehouse's RFRA Claim ......................11

           1.  RFRA's Text, History, Purpose, and Judicial Interpretation
               Support the District Court's Dismissal of Safehouse's
               RFRA Claim.........................................................................................11

           2.  The Cases on which Safehouse Relies are Inapposite.........................13

           3.  Safehouse's Contention That It Can Assert the Free
               Exercise Rights of Safehouse Board Members Lacks Merit ..............17

        B. The District Court Correctly Dismissed Safehouse's Free
           Exercise Clause Claim .................................................................................22

i

C.  Defendant Benitez Lacks Standing to Participate in this
      Appeal ................................................................................................24

II.    The Court Need Not Allow Safehouse to Amend Its Complaint .................25

CONCLUSION .................................................................................................................26

COMBINED CERTIFICATIONS

# TABLE OF AUTHORITIES

**Cases:**

*303 Creative LLC v. Elenis*,
  600 U.S. 570 (2023)....................................................................... 10, 13, 15, 16

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
  455 F.3d 195 (3d Cir. 2006) ...........................................................19

*Bob Jones University v. United States*,
  461 U.S. 574 (1983).........................................................................19

*Burwell v. Hobby Lobby Stores, Inc.*,
  573 U.S. 682 (2014)................................................ 4, 8, 9, 10, 13, 14, 15, 16

*Caver v. City of Trenton*,
  420 F.3d 243 (3d Cir. 2005) ...........................................................26

*Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*
  *v. Amos*, 483 U.S. 327 (1987) .........................................................21

*Davis v. Wigen*,
  82 F.4th 204 (3d. Cir. 2023).............................................................23

*Employment Div., Dep't of Human Res. of Or. v. Smith*,
  494 U.S. 872 (1990)................................................................. 13, 22

*Geneva Coll. v. Secretary U.S. Dep't of Health & Human Servs.*,
  778 F.3d 422 (3d Cir. 2015) ...........................................................13

*Gonzales v. Raich*,
  545 U.S. 1 (2005) ..............................................................................2

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
  219 F. Supp. 2d 57 (D.D.C. 2002), *aff'd*,
  333 F.3d 156 (D.C. Cir. 2003) ................................................9, 11, 12

*Jackson v. Danberg*,
  594 F.3d 210 (3d Cir. 2010) ...........................................................20

*Kowal v. MCI Commc'ns Corp.*,
    16 F.3d 1271 (D.C. Cir. 1994) ....................................................................25

*LeBoon v. Lancaster Jewish Community Center Ass'n*,
    503 F.3d 217 (3d Cir. 2007) ................................................................. 21, 22

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*,
    584 U.S. 617 (2018) ...................................................... 9, 13, 10, 15, 16

*McLaughlin v. Pernsley*,
    876 F.2d 308 (3d Cir. 1989) ....................................................................24

*Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*,
    694 F.3d 340 (3d Cir. 2012) ....................................................................10

*Parilla v. IAP Worldwide Servs. VI, Inc.*,
    368 F.3d 269 (3d Cir. 2004) ....................................................................19

*Residences at Bay Point Condo. Ass'n v. Standard Fire Ins. Co.*,
    641 F. App'x 181 (3d Cir. 2016) .............................................................24

*Spivack v. City of Philadelphia*,
    109 F.4th 158 (3d Cir. 2024) ...................................................................23

*United States v. Lee*,
    455 U.S. 252 (1982) .................................................................................22

*United States v. Safehouse*,
    985 F.3d 225 (3d Cir. 2021),
    *rehearing denied*, 991 F.3d 503 (3d Cir. 2021) ....................... 1, 3, 6, 7

*United States ex rel. Zizic v. Q2Administrators, LLC*,
    728 F.3d 228 (3d Cir. 2013) ....................................................................25

*Yusupov v. Attorney Gen. of the U.S.*,
    650 F.3d 968 (3d Cir. 2011) ....................................................................18

**U.S. Constitution:**

First Amendment ................................................................................ 4, 12, 13, 22
Commerce Clause ...........................................................................................7
Free Exercise Clause ........................................... 1, 2, 7, 8, 9, 10, 15, 16, 22, 23
Free Speech Clause .......................................................................................16

**Statutes:**

Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L.
    No. 91-513, 84 Stat. 1236 ........................................................................2

Religious Freedom Restoration Act:

42 U.S.C. § 2000bb ............................................................................... 1, 4
42 U.S.C. § 2000bb(a)(5) ...........................................................................11
42 U.S.C. § 2000bb-1(b)(1) ................................................................... 4, 11
42 U.S.C. § 2000bb-1(b)(2) ..........................................................................3
42 U.S.C. § 2000bb-1(c) ...............................................................................3
42 U.S.C. § 2000bb-2(4) ...............................................................................4

Religious Land Use and Institutionalized Persons Act:

42 U.S.C. § 2000cc-5 ....................................................................................4
42 U.S.C. § 2000cc-5(7)(A) ..........................................................................4

21 U.S.C. § 812 .............................................................................................2
21 U.S.C. § 812(a) .........................................................................................3
21 U.S.C. § 812(b)(1) ................................................................................ 2, 3
21 U.S.C. § 812(c) .........................................................................................3
21 U.S.C. § 812 sched. I(b)(10) ....................................................................3
21 U.S.C. § 812 sched. II(b)(6) .....................................................................3
21 U.S.C. § 812(b)(2)(A) ..............................................................................3
21 U.S.C. § 812(b)(2)(B) ..............................................................................3
21 U.S.C. § 812(b)(2)(C) ..............................................................................3
21 U.S.C. § 856(a) .............................................................................. 1, 3, 23
21 U.S.C. § 856(a)(2) ......................................................................... 1, 6, 7, 9
21 U.S.C. § 871(b) .........................................................................................3

28 U.S.C. § 1291 ........................................................................................1
28 U.S.C. § 1331 ........................................................................................1
28 U.S.C. § 1345 ........................................................................................1
42 U.S.C. § 2000e-1(a) ............................................................................21

15 Pa. Stat. .............................................................................................16
15 Pa. Cons. Stat. § 5721 ................................................................ 17, 18
15 Pa. Cons. Stat. § 5727 ................................................................ 17, 18
15 Pa. Cons. Stat. § 5301(a) ...................................................................20
Cons. Stat. Ann. § 5589 (West) .............................................................16

**Legislative Materials:**

H.R. Rep. No. 88, 103d Cong., 1st Sess. (1993) ...................................11
S. Rep. No. 111, 103d Cong., 1st Sess. (1993) .....................................11

**Miscellaneous:**

Safehouse, *Board of Directors*, https://perma.cc/MQG9-ATMR ...................................18

**INTRODUCTION**

Defendant Safehouse seeks to open a facility in Philadelphia at which members of the public could use illegal drugs under medical supervision. The United States initiated this suit by seeking a declaratory judgment that Safehouse's contemplated conduct would violate 21 U.S.C. § 856(a)(2), which makes it illegal to "manage or control" a property and "knowingly and intentionally" open it to visitors "for the purpose of . . . using a controlled substance." In an earlier appeal, this Court held that section 856(a)(2) prohibits Safehouse's proposed conduct. *See United States v. Safehouse*, 985 F.3d 225 (3d Cir. 2021). This Court remanded for consideration of Safehouse's counterclaim asserting that enforcing section 856(a) against Safehouse would violate the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb *et seq. See Safehouse*, 985 F.3d at 243. On remand, the district court dismissed Safehouse's RFRA counterclaim, along with a new Free Exercise Clause counterclaim, because Safehouse, which concedes it is a non-religious entity, cannot engage in the exercise of religion. *See* Appx5. That order also dismissed this case in its entirety. *See* Appx10.

**STATEMENT OF JURISDICTION**

The district court had jurisdiction over the complaint and Safehouse's counterclaims under 28 U.S.C. §§ 1331 and 1345. On April 3, 2024, the district court dismissed Safehouse's counterclaims and dismissed this action. *See* Appx3, 10. Safehouse and defendant José Benitez filed a timely notice of appeal on May 31, 2024. *See* Appx1. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.      Whether the district court correctly dismissed Safehouse's RFRA and Free Exercise Clause counterclaims because Safehouse is not a religious entity and thus cannot engage in the exercise of religion.

2.      Whether the district court correctly declined to allow Safehouse to amend its complaint.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case was previously before this Court in *United States v. Safehouse*, 985 F.3d 225 (3d Cir. 2021), *rehearing denied*, 991 F.3d 503 (3d Cir 2021).

## STATEMENT OF THE CASE

### A.      Statutory Background

### 1.      The Controlled Substances Act

The Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. No. 91-513, 84 Stat. 1236, creates a comprehensive federal scheme regulating the handling of controlled substances. *See Gonzales v. Raich*, 545 U.S. 1, 10, 12-13 (2005). Title II of that Act contains statutory provisions known as the Controlled Substances Act (CSA), which establish a "closed regulatory system making it unlawful to manufacture, distribute, dispense, or possess any controlled substance except in a manner authorized by the CSA." *Id.* at 12-13.

The CSA establishes five schedules of controlled substances. *See* 21 U.S.C. § 812. Schedule I regulates substances with "a high potential for abuse" and "no currently

2

accepted medical use in treatment in the United States" and concerning which "[t]here is a lack of accepted safety for use . . . under medical supervision." *Id.* § 812(b)(1). The drugs Safehouse plans to allow individuals to use at its planned supervised injection site include heroin, *see United States v. Safehouse*, 985 F.3d 225, 231 (3d Cir. 2021), which is listed under Schedule I of the CSA, *see* 21 U.S.C. § 812(a), (b)(1), (c), sched. I(b)(10). Safehouse also plans to allow individuals to use fentanyl, *see Safehouse*, 985 F.3d at 231, which is a Schedule II-listed drug, *see* 21 U.S.C. § 812(a), (b)(1), (c), sched. II(b)(6). Schedule II-listed drugs have a currently accepted medical use "with severe restrictions," *id.* § 812(b)(2)(B), but also have a "high potential for abuse" which "may lead to severe psychological or physical dependence," *id.* § 812(b)(2)(A), (C). Safehouse plans to allow individuals to use fentanyl those individuals illegally obtain themselves. *See* Appx172, 173.

21 U.S.C. § 856(a) provides that it is unlawful to "knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance," or to "manage or control any place, whether permanently or temporarily, . . . and knowingly and intentionally . . . make available for use, with or without compensation, the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance." *Safehouse*, 985 F.3d at 243 (holding that section 856(a)(2) applies to Safehouse's proposed safe-injection site).

## 2.    The Religious Freedom Restoration Act

The Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb *et seq.*, provides that the government "may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Id.* § 2000bb-1(b)(1), (2).

As originally enacted, RFRA defined "exercise of religion" to mean "the exercise of religion under the First Amendment to the Constitution." 42 U.S.C. § 2000bb-2(4) (1994) (quotation marks omitted). Congress later amended that definition to remove the reference to the First Amendment. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 714 (2014). Accordingly, the term "exercise of religion" is currently defined in RFRA to mean "religious exercise, as defined in section 2000cc-5 of this title." 42 U.S.C. § 2000bb-2(4) (quotation marks omitted).

42 U.S.C. § 2000cc-5 is a provision of the Religious Land Use and Institutionalized Persons Act (RLUIPA), which the Supreme Court has described as a "sister statute" to RFRA. *Hobby Lobby*, 573 U.S. at 730 (noting that RLUIPA applies RFRA's substantial burden/compelling interest/least-restrictive-means test to state and local action regarding prisons and zoning laws). The term "religious exercise" in RLUIPA "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A) (quotation marks omitted). Accordingly, Congress amended the definition of "exercise of religion" under RFRA to

make clear that religious exercise need not be compelled by or central to a system of religious belief to be protected under RFRA.

## B.    Factual Background

Safehouse was incorporated in 2018 by a single incorporator (former Pennsylvania Governor Edward G. Rendell) as a privately funded nonprofit corporation under Pennsylvania law. *See* Appx171, 227, 228.

Safehouse's counterclaims aver that Safehouse "is not itself a religious entity or organization." Appx211. That representation is borne out by Safehouse's Articles of Incorporation, which do not mention religion and instead assert that Safehouse was incorporated for the purposes of "reducing the harms associated with drug use by providing a range of public health and social services." Appx229. Safehouse's Corporate Bylaws also do not mention religion and state that "[t]he purposes of the Organization are as provided in the Articles of Incorporation." Appx257. The form Safehouse filed with the Internal Revenue Service to obtain federal tax-exempt status likewise neither identifies Safehouse as a religious entity nor mentions any religious purposes. *See* Appx279-287.

Safehouse's website describes Safehouse as "a privately funded, 501(c)(3) tax-exempt Pennsylvania nonprofit corporation whose mission is to save lives by providing a range of overdose prevention services." Appx78. The website recites that the "leaders and organizers of Safehouse are motivated by the Judeo-Christian beliefs ingrained in [them] from [their] religious schooling," Appx78, but does not maintain that Safehouse

is a religious entity, that it has any religious tenets, or that it is religiously motivated to engage in any activity. Instead, the website explains that Safehouse "is one element of a much-needed comprehensive plan to address a public health crisis," which Safehouse would purportedly help implement by opening "the first safe injection site in the U.S. providing a range of overdose preventions services." Appx78.

### C.    Procedural Background

In November 2018, Safehouse publicly announced its intent to open at least one facility in Philadelphia where, among other things, individual drug users could inject controlled substances such as heroin and fentanyl in a "consumption room" under medical supervision. Appx97, 172-173, 281; *Safehouse*, 985 F.3d at 231. The Department of Justice (Department) notified Safehouse that its proposed consumption room would violate federal law and that the Department would pursue appropriate legal remedies if Safehouse failed to comply with federal law. *See* Appx98. Safehouse responded by claiming that its planned activity is legal and requesting the Department to exercise its discretion not to seek any legal action against Safehouse. *See* Appx100.

1.    Based on that response and Safehouse's imminent plan to open one or more consumption rooms in Philadelphia, the United States filed a civil action against Safehouse seeking a declaratory judgment that its planned activity violates 21 U.S.C. § 856(a)(2). *See* Dkt. 1. Safehouse's answer recited that Safehouse's mission, "as stated on its website, 'is to save lives by providing a range of overdose prevention services.'" Dkt. 3, at 8, ¶ 9. Safehouse also asserted two counterclaims on its own behalf. The first

6

sought a declaratory judgment asserting that Safehouse's planned site would not violate 21 U.S.C. § 856(a)(2). *See id.* at 41-42. The second counterclaim asserted that the government's threats to prosecute Safehouse and its instigation of litigation against Safehouse violate RFRA. *See id.* at 43.

The United States subsequently filed an amended complaint adding one new defendant (Safehouse's President and Treasurer, José Benitez) and dropping another (Safehouse's former Executive Director, Jeanette Bowles). *See* Appx69. Safehouse's answer to the amended complaint reiterated that Safehouse's "mission, as stated on its website, 'is to save lives by providing a range of overdose prevention services,'" Appx103, and incorporated the counterclaims Safehouse asserted in response to the United States' original complaint, *see* Appx108-109.

The United States moved for judgment on the pleadings. The district court denied the motion, holding that section 856(a)(2) does not apply to Safehouse's proposed consumption room. *See* Appx112; *United States v. Safehouse*, 408 F. Supp. 3d 583 (E.D. Pa. 2019). The court then entered a final declaratory judgment for Safehouse, from which the United States appealed. *See Safehouse*, 985 F.3d at 231. This Court reversed, holding that section 856(a)(2) applies to Safehouse's planned consumption room and that application of that provision to Safehouse is consistent with the Commerce Clause. *See id.* at 243. This Court remanded for the district court to consider Safehouse's RFRA counterclaim. *See id.*

2.      On remand, Safehouse amended its counterclaims, which Safehouse filed only on its own behalf and not on behalf of defendant Benitez individually, to assert an additional counterclaim alleging a violation of the Free Exercise Clause. *See* Appx184, 222-224. Safehouse also added an assertion expressly stating that Safehouse "is not itself a religious entity or organization." Appx211.

The United States moved to dismiss Safehouse's RFRA and Free Exercise Clause counterclaims and the district court granted the motion. *See* Appx5, 10. The court held that Safehouse failed to assert a plausible claim for relief under RFRA or the Free Exercise Clause because Safehouse is not a religious entity and thus cannot show that its proposed activities would constitute an exercise of religion. *See* Appx5 (noting that "a threshold for both [Safehouse's RFRA and Free Exercise Clause] claims is that Safehouse establish its proposed activities would constitute an exercise of religion, and it cannot plausibly do so").

In opposing the government's motion to dismiss, Safehouse principally relied on *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014), which allowed three corporations to assert rights under RFRA. The district court held that *Hobby Lobby* is inapplicable here because that case involved "closely held corporations controlled by families who explicitly embraced religious values and practices in the operation of the business." Appx8. By contrast, the court noted, Safehouse has no individual owners, is governed by Articles of Incorporation and Bylaws that do not mention religion or set out any religious tenets, and holds itself out to the public as pursuing a mission that is expressed

in secular terms ("to address a public health crisis," Appx6 (quotation marks omitted)). *See* Appx5-8. Thus, even though some corporations "can be considered 'persons' acting with a religious purpose," Appx8, the court held that Safehouse is not one of those corporations. For all these reasons, the court granted the United States' motion to dismiss Safehouse's counterclaims and dismissed this case. *See* Appx10.

## SUMMARY OF ARGUMENT

The United States filed this action seeking a declaratory judgment that Safehouse's plans to operate a supervised injection site, where members of the public would be invited to use illegal drugs while supervised by Safehouse staff, would violate 21 U.S.C. § 856(a)(2), a provision of the Controlled Substances Act. In a prior appeal, this Court held that section 856(a)(2) bars Safehouse's intended conduct and remanded for the district court to consider Safehouse's RFRA counterclaim.

On remand, the district court correctly dismissed Safehouse's RFRA counterclaim, along with a new Free Exercise Clause counterclaim, because Safehouse—as a self-avowed non-religious entity—cannot engage in the exercise of religion. Safehouse cites no case holding that a non-religious entity can engage in the exercise of religion under RFRA or the Free Exercise Clause, and the only decision on that question of which we are aware properly rejected that notion. *See Holy Land Found. for Relief & Dev. v. Ashcroft*, 219 F. Supp. 2d 57 (D.D.C. 2002), *aff'd*, 333 F.3d 156 (D.C. Cir. 2003).

The court correctly rejected Safehouse's reliance on three Supreme Court cases, *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014); *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 584 U.S. 617 (2018); and *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023), because, among other reasons, the corporations in those cases were governed by documents that required those corporations to operate consistently with their founders' religious beliefs. Safehouse, by contrast, is governed by Articles of Incorporation and Bylaws that do not mention religion, much less bind Safehouse to operating consistently with the religious beliefs of its sole founder or anyone else.

Safehouse's Free Exercise Clause claim fails for similar reasons. Safehouse cites no case holding that a nonreligious entity can assert Free Exercise Clause rights, and we are aware of none.

Safehouse also fails to demonstrate that the district court erred in refusing to allow it to amend its counterclaims. Safehouse identifies no amendment that would cure the defects the district court found in Safehouse's counterclaims. For all these reasons, the court's dismissal of Safehouse's counterclaims and dismissal of this action should be affirmed.

## STATEMENT OF THE STANDARD OF REVIEW

This Court exercises plenary review of whether a complaint was properly dismissed for failure to state a claim. *See, e.g.*, *Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 350 (3d Cir. 2012).

# ARGUMENT

## I.    The District Court Correctly Dismissed Safehouse's Counterclaims.

### A.    The Court Correctly Dismissed Safehouse's RFRA Claim.

#### 1.    RFRA's Text, History, Purpose, and Judicial Interpretation Support the District Court's Dismissal of Safehouse's RFRA Claim.

RFRA provides that the government "may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b)(1), (2). Safehouse's operative answer affirmatively avers that it is a non-religious entity, Appx221, and the district court held that Safehouse, as a non-religious entity, cannot engage in the exercise of religion, *see* Appx5.

The district court's holding makes sense. Nothing in RFRA's text suggests that a non-religious entity can exercise "religious liberty," 42 U.S.C. § 2000bb(a)(5), and the House and Senate Reports accompanying RFRA mention protecting "religious institutions," H.R. Rep. No. 88, 103d Cong., 1st Sess. at 9 (1993); S. Rep. No. 111, 103d Cong., 1st Sess. at 9 (1993), with no mention of protecting non-religious entities.

The district court's holding also is supported by the only relevant case we have found. In *Holy Land Foundation for Relief & Development v. Ashcroft*, 219 F. Supp. 2d 57 (D.D.C. 2002), *aff'd*, 333 F.3d 156 (D.C. Cir. 2003), a corporation asserted that its use of donations from religious donors for charitable purposes constituted the exercise of

religion under RFRA. *See id.* at 83. The district court rejected that contention, explaining that "[a]lthough charitable activities may constitute religious exercise if performed by religious believers for religious reasons, [Holy Land Foundation (HLF)] has not established that, as an organization, it made these charitable contributions as an exercise of its own religious beliefs." *Id.* Nowhere in HLF's complaint, the district court noted, did HLF contend that it was a religious organization. *See id.* "Instead, HLF define[d] itself as a 'non-profit charitable corporation,' without any reference to its religious character or purpose." *Id.* That description mirrors Safehouse's operative counterclaims, which identify Safehouse as a non-religious entity and do not contend that Safehouse itself has any religious purpose or character. *See supra* p. 8.

The D.C. Circuit affirmed the district court's ruling in *Holy Land Foundation* without deciding whether HLF, as a non-religious entity, could assert free exercise rights under RFRA. *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156 (D.C. Cir. 2003). Significantly, however, the D.C. Circuit noted that it considered "dubious" the proposition that "a charitable corporation not otherwise defined can exercise religion as protected [under] the First Amendment." *Id.* at 167.

The D.C. Circuit's and the district court's view of this issue in *Holy Land Foundation* is correct. Nothing in RFRA's text or history suggests that a non-religious entity can engage in the exercise of religion, *see supra* p. 11, and extending RFRA rights to non-religious entities would extend RFRA far beyond its purposes. The protection RFRA provides—an exemption from generally applicable law—is unusual in the law

because it effectively creates a right "to become a law unto [one]self" (except where the government's action is the least restrictive means to further a compelling interest). *Employment Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 885 (1990) (quotation marks omitted); *see also Geneva Coll. v. Secretary U.S. Dep't of Health & Human Servs.*, 778 F.3d 422, 430 (3d Cir. 2015). Expanding RFRA beyond its plain terms by allowing non-religious entities to demand RFRA exemptions thus could significantly impair important public interests, including the interests implicated in this case.

### 2.    The Cases on which Safehouse Relies are Inapposite.

Safehouse cites no case holding that a non-religious entity can engage in the exercise of religion under RFRA and provides no reason why this Court should accept that counterintuitive proposition.

Citing *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 701-03, 713-18 (2014), *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*, 584 U.S. 617, 625-26 (2018), and *303 Creative LLC v. Elenis*, 600 U.S. 570, 602-03 (2023), Safehouse argues that a corporate entity may assert a religious liberty claim under RFRA or the First Amendment based on the commitments of its organizers, Br. 23. Based on those cases, Safehouse contends that it may assert the free exercise interests of its board members. *See* Br. 25-26.

Safehouse reads those cases far too broadly. In *Hobby Lobby*, for example, the Supreme Court held that RFRA protected the interests of three different for-profit closely held corporations, each of which was closely controlled by its founders and

obligated by its founding documents to operate consistently with its founders' religious beliefs. *See* 573 U.S. at 700-03.

The first of those corporations, Conestoga Wood Specialties, was formed by a member of the Mennonite Church (Norman Hahn) and solely owned by Hahn, his wife, and their three sons. *See Hobby Lobby*, 573 U.S. at 700-01. The Hahns "exercise[d] sole ownership of the closely held business," "control[led] its board of directors," and "h[e]ld all of its voting shares." *Id.* The Hahns "believe[d] that they [we]re required to run their business 'in accordance with their religious beliefs and moral principles," and "[t]he company's 'Vision and Values Statements' affirm[ed] that Conestoga endeavors to 'ensur[e] a reasonable profit in [a] manner that reflects [the Hahns'] Christian heritage.'" *Id.* at 701 (last three alterations in original).

The two other corporations in *Hobby Lobby* were Hobby Lobby Stores, Inc. and Mardel. *See* 573 U.S. at 702. Those companies were formed, owned, and operated by David and Barbara Green and their three children. *See id.* The Green family "retain[ed] exclusive control of both companies," *id.*, and operated the businesses "through a management trust" that required the family, who were the trustees, to execute the trust "according to their religious principles," *see id.* 703 n.15. "Each family member . . . signed a pledge to run the businesses in accordance with the family's religious beliefs," and Hobby Lobby's statement of purpose committed the Greens to "'[h]onoring the Lord in all [they] do by operating the company in a manner consistent with Biblical principles,'" *id.* at 703 (last two alterations in original).

14

As the district court correctly observed, Safehouse is unlike any of the corporations involved in *Hobby Lobby* because Safehouse's governing documents do not mention religion or set out any religious tenets. *See* Appx6.

*Masterpiece Cakeshop* and *303 Creative* are also inapposite, including because neither of those cases involved a RFRA claim. In *Masterpiece Cakeshop*, the Colorado Civil Rights Commission concluded that the sole owner and operator of a Colorado bakery violated the Colorado Anti-Discrimination Act by informing a same-sex couple that he would not create a cake for their wedding because of his religious opposition to same-sex marriages. *See* 584 U.S. at 621. The Supreme Court held that the Commission, which entered an enforcement order against the owner, violated the Free Exercise Clause by showing hostility toward religion. *See id.* at 634-40.

*Masterpiece Cakeshop* is inapposite because the Colorado bakery in that case was owned and operated by a sole individual who sought "to 'honor God through his work at Masterpiece Cakeshop'" and who believed that creating a wedding cake for a same-sex wedding would be "equivalent to participating in a celebration that is contrary to his own most deeply held beliefs." 584 U.S. at 626. *Masterpiece Cakeshop* resembles *Hobby Lobby* in that respect, as both cases involved corporations that were controlled and operated by their founders consistent with the founders' religious beliefs. *See supra* pp. 13-15 (discussing *Hobby Lobby*). Here, by contrast, Safehouse—a self-avowed secular entity—is neither operated by its sole founder nor required to operate consistent with any religious tenets.

Safehouse also is unlike the solely owned and operated bakery in *Masterpiece Cakeshop* because it is a non-profit corporation and because "a non-profit corporation organized under Pennsylvania law has no individual owners." Appx8. "The statutory provision which addresses 'ownership of assets' requires the non-profit corporation to designate the trusts and funds it controls as assets, and those assets 'shall not be deemed to have individual ownership.'" Appx8 (quoting 15 Pa. Stat. and Cons. Stat. Ann. § 5589 (West)). "Consequently," as the district court properly noted, "the actions of a non-profit are governed by its stated purpose, not the preferences of individual owners." Appx8. Here, as noted, Safehouse's Articles of Incorporation and Bylaws do not recite that Safehouse was formed with any religious purpose or tenets. *See supra* p. 5.

*303 Creative* is even farther afield, as that case involved neither a RFRA nor a Free Exercise Clause claim. In that case, the sole owner of a website and graphic design business sought an injunction preventing Colorado from forcing her to create wedding websites celebrating marriages that defy her beliefs. *See 303 Creative*, 600 U.S. at 580. The owner alleged that she faced a credible threat that Colorado would compel speech from her that she did not want to produce, *see id.*, and the Supreme Court reversed, under the Free Speech Clause, the lower courts' refusal to grant the owner's requested injunction, *see id.* at 603. The fact that *303 Creative* did not involve a RFRA or Free Exercise Clause claim is sufficient, standing alone, to render the case inapposite. *303 Creative* also is distinguishable, moreover, because the website and graphic design business at issue there was owned and operated by a single individual who operated the

16

business according to her own beliefs, which precluded "generating works that encourage violence, demean another person, or defy her religious beliefs by, say, promoting atheism." *Id.* at 580. Safehouse, as noted, is neither operated by its sole founder nor required by its founding documents to operate consistent with any religious tenets.

### 3. Safehouse's Contention That It Can Assert the Free Exercise Rights of Safehouse Board Members Lacks Merit.

Safehouse argues that it should be allowed to assert the free exercise rights of some of its board members, who assert that they are religious and have religious motivations for supporting Safehouse's planned supervised-injection site. Safehouse contends that Pennsylvania law "confers on a nonprofit corporation's board the authority to govern and act on its behalf," Br. 30 (citing 15 Pa. Cons. Stat. § 5721), and that Safehouse's Bylaws grant Safehouse's board members "full authority to manage Safehouse's 'business and affairs' and 'all powers to act' on Safehouse's behalf," Br. 31 (quoting Appx258 (Article 3.1)).

This argument misses the mark. Safehouse has conceded that it is a non-religious entity, *see supra* p. 8, and does not allege that its board of directors has ever amended Safehouse's Articles of Incorporation or Bylaws to state a religious purpose or acted to require Safehouse to operate consistent with the religious beliefs of its board. *See* 15 Pa. Cons. Stat. §§ 5721, 5727 (describing the requirements for quorum of and action by directors of a Pennsylvania nonprofit corporation). Instead, Safehouse has elected to

persist in contending, wrongly, that the religious motivations of Safehouse board members are properly attributed to Safehouse itself.

Moreover, while Safehouse's second amended answer and counterclaims refers to the religious beliefs of four board members, *see* Br. 8, Safehouse's website identifies a total of 13 current board members, with no mention of what those individuals' religious beliefs may or may not be. *See* Safehouse, *Board of Directors*, https://perma.cc/MQG9-ATMR. Thus, the Court cannot assume that the majority of Safehouse's current board shares the religious motivations ascribed to the four board members discussed in Safehouse's second amended answer and counterclaims. Indeed, Safehouse itself makes no such representation.[1]

In addition, the composition of Safehouse's Board of Directors has changed over time. For example, at the time Safehouse submitted its application for federal tax-exempt status, Safehouse's Board consisted solely of two individuals, *see* Appx288-290, and the record contains no information regarding the religious beliefs (if any) of one of those individuals (Ronda Goldfein), *see* Appx290. The fact that the composition of Safehouse's Board has fluctuated over time, as is typical for corporations that have existed for a number of years, further undermines the argument that the religious beliefs of Safehouse's (fluctuating) Board should be attributed to Safehouse under RFRA.

---

[1] The Court can take judicial notice of Safehouse's own website. *See, e.g.*, *Yusupov v. Attorney Gen. of the U.S.*, 650 F.3d 968, 985 n.23 (3d Cir. 2011).

In a footnote, Safehouse mentions that after its incorporation, Safehouse issued a mission statement noting that its leaders and organizers are motivated by their Judeo-Christian beliefs. *See* Br. 28 n.11. As a matter of law, that statement cannot negate Safehouse's judicial admission that it is not a religious entity, *see* Appx211, which is binding on Safehouse, *see, e.g.*, *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 211 & n.20 (3d Cir. 2006); *Parilla v. IAP Worldwide Servs. VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004). Moreover, that mission statement does not state that Safehouse is a religious entity. Statements regarding the religious beliefs of a secular corporation's board members do not suggest that the corporation itself is religious or engages in the exercise of religion. Many secular corporations have religious board members, but that fact does not mean those corporations are religious or can engage in the exercise of religion.

Safehouse wrongly contends that its organization for a "charitable" purpose is sufficient to state a religious purpose, Br. 31-32, 33 (quotation marks omitted), but not every charitable purpose is a religious purpose, nor is the converse true. For example, in *Bob Jones University v. United States*, 461 U.S. 574 (1983), the Supreme Court held that nonprofit private schools that prescribe and enforce racially discriminatory admission standards because of religious doctrine do not qualify as tax-exempt organizations under the Internal Revenue Code and that contributions to such organizations are not deductible as charitable contributions.

Moreover, contrary to what Safehouse contends, our argument is not that Safehouse must "make a binary choice between a charitable or religious purpose to maintain its right to assert religious rights." Br. 33. Many charitable organizations are not religious, and our position is merely that Safehouse is not a religious entity—a proposition that, as noted, Safehouse itself affirmatively concedes in its operative answer, *see* Appx211. Accordingly, contrary to Safehouse's suggestion (Br. 33), the district court's ruling would not mean that anyone who wishes to form a Pennsylvania nonprofit corporation must choose between stating a charitable or a religious purpose. A nonprofit corporation can be incorporated under Pennsylvania law for both charitable and religious purposes, *see* 15 Pa. Cons. Stat. § 5301(a), but Safehouse has not been.

Safehouse also incorrectly contends (Br. 29) that the district court's holding could deprive Catholic hospitals, Muslim haberdasheries, and Jewish summer camps of the ability to assert religious liberty rights. Inherently religious entities like these examples very likely will have articles of incorporation or bylaws that identify a religious purpose. Safehouse has not identified any such corporation that does not, and a court may not hold government conduct unlawful based on speculation about unlikely events. *See Jackson v. Danberg*, 594 F.3d 210, 227 (3d Cir. 2010).

Safehouse (Br. 27-28) also wrongly criticizes the district court for observing that Safehouse would not qualify as a religious corporation under Title VII's religious-corporation exception. That exception provides that Title VII's prohibition of

20

employment discrimination "shall not apply . . . to a religious corporation . . . with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation . . . of its activities." 42 U.S.C. § 2000e-1(a). This argument is beside the point because Safehouse has conceded that it is not a religious entity. *See* Appx211.

Moreover, Title VII's religious-corporation exception is in fact pertinent here. That exception, like RFRA, is designed to provide statutory protection for religious liberty. *See, e.g.*, *Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 335-36 (1987). There is no reason to believe Congress extended religious-liberty protections to non-religious corporations under RFRA that Congress declined to provide under Title VII.

In addition, the district court correctly concluded that under the case law interpreting Title VII's religious-corporation exception—including this Court's own decision in *LeBoon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217 (3d Cir. 2007)—Safehouse would not qualify as a religious corporation. *See* Appx7 (concluding that aside from its non-profit status, Safehouse "does not embody any of the other characteristics of a religious institution recognized in *LeBoon*"). *LeBoon* identified a "series of criteria for courts to consider in determining whether an entity is engaged in religious activity," Appx7, for purposes of Title VII's religious-corporation exception, including among others "whether the entity's articles of incorporation or other pertinent documents state a religious purpose," and "whether the entity holds itself out

to the public as secular or sectarian," 503 F.3d at 226. Safehouse does not challenge the district court's conclusion that Safehouse—which was not founded for religious purposes and holds itself out to the public as a nonreligious entity—would not qualify as a religious corporation under Title VII, and that conclusion is plainly correct.

### B. The District Court Correctly Dismissed Safehouse's Free Exercise Clause Claim.

The First Amendment provides that "Congress shall make no law . . . prohibiting the free exercise of" religion. U.S. Const. amend. I. In *Smith*, 494 U.S. 872, the Supreme Court held that the Free Exercise Clause "does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *See id.* at 879 (quoting *United States v. Lee*, 455 U.S. 252, 263 n.3 (1982) (Stevens, J., concurring in the judgment)).

The district court dismissed Safehouse's Free Exercise Clause claim for the same reason the court rejected Safehouse's RFRA claim: Safehouse is not a religious entity and thus cannot itself engage in the free exercise of religion. *See* Appx5, 9 (explaining that because Safehouse "is not a religious entity," "[n]either RFRA nor the [F]ree [E]xercise [C]lause" protect its actions). Safehouse's opening brief does not challenge the court's reasoning as to Safehouse's Free Exercise Clause counterclaim on any ground separate from Safehouse's RFRA counterclaim. Accordingly, this Court should

affirm the dismissal of Safehouse's Free Exercise Clause counterclaim for the same reasons that it should affirm the dismissal of Safehouse's RFRA counterclaim.

Contrary to what Safehouse suggests (Br. 47), this Court should not remand Safehouse's Free Exercise Clause claim for the district court to consider *Spivack v. City of Philadelphia*, 109 F.4th 158 (3d Cir. 2024), which was issued after the district court's opinion here. The plaintiff in *Spivack* was an individual, not a corporation, and *Spivack* thus did not address whether a non-religious corporation can assert rights under the Free Exercise Clause. The district court dismissed Safehouse's Free Exercise Clause claim on that ground, and the Court would have no occasion to reach the merits of Safehouse's Free Exercise Clause claims if the Court holds that Safehouse, as a non-religious corporation, cannot assert those rights.

Accordingly, the Court need not and should not address Safehouse's contentions (Br. 47-53) that applying section 856(a) to Safehouse's proposed conduct is neither neutral and generally applicable nor the least restrictive means to further a compelling government interest. But if the Court were for some reason to hold that Safehouse can raise Free Exercise Clause or RFRA rights, the Court should allow the district court to address those issues on remand.[2]

---

[2] The government's motion to dismiss argued that section 856(a) is neutral and generally applicable. *See* Dkt. 211, at 26-40; Dkt. 225, at 24-36. Whether government action is the least restrictive means to further a compelling government interest typically cannot be resolved on the pleadings. *See Davis v. Wigen*, 82 F.4th 204, 211 (3d Cir. 2023).

## C.    Defendant Benitez Lacks Standing to Participate in this Appeal.

In a footnote, the opening brief contends that Safehouse's Board President Benitez "is a party to this appeal with a live RFRA affirmative defense to [the Department]'s declaratory judgment action." Br. 26 n.26. That is incorrect.

"[I]n order to have standing to appeal a party must be aggrieved by the order of the district court from which it seeks to appeal." *Residences at Bay Point Condo. Ass'n v. Standard Fire Ins. Co.*, 641 F. App'x 181, 183 (3d Cir. 2016) (quoting *McLaughlin v. Pernsley*, 876 F.2d 308, 313 (3d Cir. 1989)). Although Benitez purported to join Safehouse's notice of appeal, *see* Appx1, he does not claim that he has standing to appeal the district court's order dismissing Safehouse's counterclaims. Only Safehouse itself asserted those counterclaims. *See* Appx220-224 (Safehouse's Second Amended Counterclaims for Declaratory and Injunctive Relief); Appx102, 108-109 (including, on behalf of Safehouse alone, counterclaims to the amended complaint); Dkt. 3, at 41-43 (asserting, on behalf of Safehouse alone, counterclaims to the original complaint). Accordingly, the notice of appeal accurately refers to "Defendant and Counterclaim Plaintiff Safehouse and Defendant José Benitez." Appx1.

The opening brief also fails to develop any argument that Benitez, in his capacity as one of several of Safehouse's board members, would for some reason have standing to participate in this appeal as a defendant. In any event, the district court's dismissal of this action also does not aggrieve Benitez in his capacity as a defendant because the court entered no relief against Benitez personally or otherwise.

24

## II.    The Court Need Not Allow Safehouse to Amend Its Complaint.

In opposing the government's motion to dismiss, Safehouse requested that the court allow it to amend its counterclaims to "cure any defects th[e c]ourt identifies in [Safehouse's] pleading." Dkt. 215, at 47. Safehouse contends (Br. 53-54) that the district court's failure to grant it leave to amend requires a remand, but that is incorrect.

As an initial matter, although Safehouse attempts to fault the district court for failing to "explain the basis for [its] denial" of leave to amend, Br. 53, "a 'bare request in an opposition to a motion to dismiss—without any indication of the particular ground on which amendment is sought . . . —does not [even] constitute a motion within the contemplation of Rule 15(a),'" *United States ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 243 (3d Cir. 2013) (first alteration in original) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1280 (D.C. Cir. 1994)); *see also id.* (noting that failure to attach a draft amended complaint is also "fatal to a request for leave to amend" (quotation marks omitted)). Accordingly, Safehouse's request for leave to amend was inadequate as a matter of law.

In any event, amendment would be futile. The district court dismissed Safehouse's counterclaims because Safehouse is not a religious entity, and Safehouse has not identified any amendment that could cure that defect. Safehouse mentions "additional allegations supporting . . . its board members['] religious beliefs," Br. 54, but the district court correctly held that Safehouse cannot assert its board members' religious beliefs. No amendment could cure that legal defect, and a remand is not

appropriate where it would be futile. *See, e.g., Caver v. City of Trenton*, 420 F.3d 243, 264-65 (3d Cir. 2005).

## CONCLUSION

The district court's judgment dismissing Safehouse's counterclaims and dismissing this action should be affirmed.

Respectfully submitted,

Brian M. Boynton
  *Principal Deputy Assistant Attorney General*

Jacqueline Romero
  *United States Attorney*

Sarah Carroll
  (202) 514-4027
<u>s/s Lowell V. Sturgill Jr.</u>
Lowell V. Sturgill Jr.
  (202) 514-3427
  *Attorneys, Civil Division*
  *Appellate Staff, Room 7527*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, N.W.*
  *Washington, D.C. 20530*

## COMBINED CERTIFICATIONS

1.     Government counsel are not required to be members of the bar of this Court.

2.     This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6240 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word in Garamond 14-point font, a proportionally spaced typeface.

3.     On November 4, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.

4.     The text of the electronic version of this document is identical to the text of the hard copies that will be provided.

5.     This document was scanned for viruses using CrowdStrike Falcon Sensor 11/04/2024, and no virus was detected.


*s/ Lowell V. Sturgill Jr.*
Lowell V. Sturgill Jr.