No. 24-2027

# In the United States Court of Appeals for the Third Circuit

UNITED STATES OF AMERICA,

v.

SAFEHOUSE, a Pennsylvania nonprofit corporation; and JOSÉ BENITEZ, as President and Treasurer of Safehouse, *Appellants*.

---

SAFEHOUSE, a Pennsylvania nonprofit corporation, *Appellant*,

v.

U.S. DEPARTMENT OF JUSTICE; MERRICK B. GARLAND, in his official capacity as Attorney General of the United States; and JACQUELINE C. ROMERO, in her official capacity as U.S. Attorney for the Eastern District of Pennsylvania, *Appellees*.

---

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
No. 19-cv-519
District Judge Gerald A. McHugh

---

## REPLY BRIEF OF APPELLANTS SAFEHOUSE AND JOSÉ BENITEZ

Ilana H. Eisenstein
Ben C. Fabens-Lassen
DLA PIPER LLP (US)
1650 Market St., Ste. 5000
Philadelphia, PA 19103
(215) 656-3300

Ronda B. Goldfein
Adrian M. Lowe
AIDS LAW PROJECT OF PENNSYLVANIA
1211 Chestnut St., Ste. 600
Philadelphia, PA 19107
(215) 587-9377

Peter Goldberger
LAW OFFICE OF PETER GOLDBERGER
P.O. Box. 645
Ardmore, PA 19003
(610) 649-8200

Seth F. Kreimer
3501 Sansom St.
Philadelphia, PA 19104
(215) 898-7447

*Attorneys for Appellants Safehouse and José Benitez*

November 25, 2024

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................1

ARGUMENT IN REPLY ......................................................................4

I.    Safehouse Has Plausibly Alleged that It Is a "Person" Engaged in the Exercise of Religion under RFRA and the First Amendment........................4

    A.    Any Attempt to Limit RFRA's Protections to "Religious Entities"— Rather than All "Persons"—Conflicts with RFRA's Text...................5

    B.    DOJ Cannot Limit RFRA's Protections by Ignoring RFRA's Text and Focusing Instead on RFRA's Legislative History and Purpose. ......................................................................................10

    C.    DOJ's Attempt to Limit RFRA's Protections to "Religious Entities" Conflicts with Supreme Court Precedent............................12

    D.    DOJ's Argument that Safehouse's Claims Fail on the Ground that Safehouse Is Not a "Religious Entity" Conflicts with the Pleading Standards and the Plausible Allegations. ............................................17

    E.    DOJ Fails to Address the Authority of Safehouse's Board under Pennsylvania Corporate Law and Safehouse's Arguments Concerning Its Tax Exempt Status.......................................................21

II.    DOJ Does Not Dispute that Safehouse Adequately Alleged the Remaining Elements of a Plausible RFRA or First Amendment Claim........22

III.    José Benitez Has Standing to Appeal ...........................................................23

IV.    The District Court Erred in Denying Leave to Amend. .................................24

CONCLUSION ....................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*303 Creative LLC v. Elenis*,
　600 U.S. 570 (2023)..............................................................3, 15, 21

*Braunfeld v. Brown*,
　366 U.S. 599 (1961)......................................................................9

*In re Burlington Coat Factory Sec. Litig.*,
　114 F.3d 1410 (3d Cir. 1997) .........................................................25

*Burwell v. Hobby Lobby Stores, Inc.*,
　573 U.S. 682 (2014)..............................................................*passim*

*Conestoga Wood Specialties Corp. v. Sebelius*,
　917 F. Supp. 2d 394 (E.D. Pa. 2013)................................................14

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
　144 S. Ct. 2440 (2024).................................................................10

*Davis v. Wigen*,
　82 F.4th 204 (3d Cir. 2023) .........................................3, 10, 17, 19, 22

*Employment Division v. Smith*,
　494 U.S. 872 (1990).....................................................................12

*Gallagher v. Crown Kosher Super Market of Massachusetts, Inc.*,
　366 U.S. 617 (1961)........................................................................3

*Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.*,
　240 U.S. 251 (1916).....................................................................24

*Mersino Mgmt. Co. v. Burwell*,
　No. 13-1944, 2015 WL 9850709 (6th Cir. Jan. 28, 2015) ..................14, 15

*Mersino Mgmt. Co. v. Sebelius*,
　No. 13-cv-11296, 2013 WL 3546702, at *11 (E.D. Mich. July 11, 2013) ........14

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
    333 F.3d 156 (D.C. Cir. 2003)..................................................................9

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
    219 F. Supp. 2d 57 (D.D.C. 2002)...................................................8, 9

*Mack v. Warden Loretto FCI*,
    839 F.3d 286 (3d Cir. 2016) ................................................................11

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*,
    584 U.S. 617 (2018)........................................................3, 13, 15, 21

*Mercer v. Theriot*,
    377 U.S. 152 (1964)..........................................................................24

*Nat'l Ass'n of Mfrs. v. DOD*,
    583 U.S. 109 (2018)............................................................................6

*In re Phila. Newspapers, LLC*,
    599 F.3d 298 (3d Cir. 2010) ..............................................................10

*Rivers v. Roadway Express, Inc.*,
    511 U.S. 298 (1994)............................................................................9

*Rotkiske v. Klemm*,
    890 F.3d 422 (3d Cir. 2018) ................................................................5

*United States v. Safehouse*,
    985 F.3d 225 (3d Cir. 2021) ..............................................................11

*United States v. Johnson*,
    114 F.4th 148 (3d Cir. 2024) ..............................................................5

**Statutes**

1 U.S.C. § 1 ...............................................................................2, 6

21 U.S.C. § 856(a) ........................................................................1

26 U.S.C. § 501(c)(3)....................................................................22

42 U.S.C. § 2000bb-1(a) ..........................................................2, 16

42 U.S.C. § 2000bb-1(b)(1) ..........................................................5

42 U.S.C. § 2000bb-1(b)(2) ............................................................5

42 U.S.C. § 2000bb-1(c) ..............................................................5, 9

42 U.S.C. § 2000bb(b)(1) ..............................................................12

42 U.S.C. § 2000bb(b)(2) ..............................................................12

42 U.S.C. § 2000cc-3(g) ..................................................................3

42 U.S.C. § 2000e–1(a) ....................................................................8

# INTRODUCTION

Three to four people die of opioid overdoses every day on the streets of Philadelphia, and board members of Safehouse are religiously called to do what they can to save those lives. They seek to pursue that calling by establishing a medically supervised consumption site. But the Department of Justice (DOJ) has prevented those life-saving efforts by threatening Safehouse with penalties under the Controlled Substance Act (21 U.S.C. § 856(a)). Safehouse has plausibly pled that the threat of criminal punishment is a "burden" on religious exercise, unjustified by any compelling interest and thus a violation of the Religious Freedom Restoration Act (RFRA). And Safehouse has plausibly alleged that DOJ's threat also violates the Free Exercise Clause of the First Amendment, because DOJ has burdened sincere religious practice pursuant to a policy that is not "generally applicable," without demonstrating a compelling interest that justifies this burden.

DOJ contests none of this on appeal. It does not claim that the beliefs of Safehouse's board members and officers are not religious or sincere or that action in their capacity as such does not "exercise" these religious values. Nor does DOJ argue—much less establish—that its policy of selectively enforcing the Controlled Substances Act against Safehouse, but not against other secular providers of similar services, is "generally applicable" or that it has a compelling interest in preventing Safehouse from saving lives. Instead, DOJ's sole contention is that Safehouse

cannot "engage in the exercise of religion" under either RFRA or the Free Exercise Clause because Safehouse is not expressly incorporated as a "religious entity." (DOJ Br. 9.)

At the outset, DOJ's position conflicts with RFRA's plain text, which protects all "person[s]" not, as DOJ would have it, only "religious entities"—much less "a religious corporation, association, educational institution, or society," the different phrase used in Title VII.  42 U.S.C. §§ 2000bb-1(a), (b).[1]  In *Hobby Lobby*, the Supreme Court held that RFRA incorporates the Dictionary Act's definition of the term "person," which "include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 707 (quoting 1 U.S.C. § 1).  This definition necessarily includes Safehouse—a nonprofit corporation—because "[n]o known understanding of the term 'person' includes *some* but not all corporations." *Id.* at 708.  Congress, moreover, has explicitly mandated that RFRA be "construed in favor of a broad protection of religious exercise, to the maximum extent permitted

---

[1] RFRA prohibits the "Government [from] substantially burden[ing] *a person's* exercise of religion even if the burden results from a rule of general applicability" unless the Government "demonstrates that application of the burden to *the person*— (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. §§ 2000bb-1(a), (b) (emphasis added).

by the terms of this chapter and the Constitution." 42 U.S.C. § 2000cc-3(g); *Davis v. Wigen*, 82 F.4th 204, 211 (3d Cir. 2023).

DOJ's position also cannot be reconciled with the long line of precedent stretching from *Gallagher v. Crown Kosher Super Market of Massachusetts, Inc.*, 366 U.S. 617 (1961), to *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 705 (2014), to *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*, 584 U.S. 617 (2018), in which the Supreme Court recognized that corporations can and do engage in the exercise of religion, even if they were not incorporated as "religious entities" by virtue of their corporate charters or bylaws. *See also 303 Creative LLC v. Elenis*, 600 U.S. 570 (2023) (religion-based free speech claim). DOJ fails to distinguish these cases (Br. 14-17) by claiming these for-profit corporations—with businesses as diverse as a grocery, bakery, chain of crafting supply stores, and a specialty wood products store—were somehow "bound' to a particular religious exercise through articles of incorporation, bylaws, or pledges. Such deeply factual points were neither required by the Supreme Court nor even important to its holdings that these companies may assert protected religious exercise.

Meanwhile, although DOJ does not apparently dispute the sincerity of Safehouse's religious beliefs, it glaringly misquotes Safehouse's counterclaim as if Safehouse stated only that it "is not itself a religious entity or organization." But DOJ mischaracterizes the counterclaim by failing to cite the complete allegation:

3

*At the core of all board members' faith is the principle that the preservation of human life is paramount and overrides any other considerations*. Although Safehouse is not itself a religious entity or organization, *its founders' and leaders' beliefs are those of the corporation, and the pursuit of its mission and conduct of its business will implement those beliefs.*

Appx211 (¶126) (emphasis added) (citing *Hobby Lobby*).   Given Safehouse's pleadings establishing its religious beliefs and exercise are derived from the sincerely held religious faith determined by Safehouse's board—as well as the faith and beliefs of Safehouse's board members, founders, and leaders—the only question for this Court is whether RFRA permits the government to disregard such beliefs unless a nonprofit corporation is *expressly* incorporated as a "religious entity." RFRA's plain text and precedent place no such limits on the protection of religious liberties of nonprofit corporations.

Because Safehouse has pled viable claims under RFRA and the First Amendment, this Court should reverse the District Court's order and remand for further proceedings.

## ARGUMENT IN REPLY

### I.    Safehouse Has Plausibly Alleged that It Is a "Person" Engaged in the Exercise of Religion Under RFRA and the First Amendment.

In its opening brief, Safehouse established that it had alleged plausible claims for violations of RFRA and the First Amendment and that the District Court erred in dismissing those claims with prejudice.  (Safehouse Br. 17-20, 22-54.)  DOJ's tepid

response confirms that conclusion.  In urging affirmance, DOJ repeatedly argues that Safehouse cannot pursue RFRA or Free Exercise claims as a matter of law because Safehouse is not expressly incorporated as a "religious entity."  (DOJ Br. 9-10.)  But that conclusion is meritless and inconsistent with RFRA's statutory text, the legislative history and purpose, binding precedent, and the applicable pleading standards.

### A.    Any Attempt to Limit RFRA's Protections to "Religious Entities"—Rather than All "Persons"—Conflicts with RFRA's Text.

This Court should reject the contention—on which the District Court's erroneous order rests—that Safehouse cannot state a RFRA claim as a "non-religious entity."  (DOJ Br. 9.)  This Court has instructed that statutory interpretation "begin[s] with the text."  *United States v. Johnson*, 114 F.4th 148, 153 (3d Cir. 2024); *see, e.g.*, *Rotkiske v. Klemm*, 890 F.3d 422, 424-25 (3d Cir. 2018) (en banc) (quoting *Ross v. Blake*, 578 U.S. 632, 638 (2016)).  But DOJ ignores RFRA's plain language.

RFRA protects *all* "persons" engaged in the "exercise of religion."  42 U.S.C. § 2000bb-1(b)(1), (2); *see Hobby Lobby*, 573 U.S. at 707 ("RFRA applies to 'a person's' exercise of religion").[2]  Nothing in RFRA limits its scope to natural

---

[2] A separate provision of RFRA likewise provides that "[any] *person* whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government."  42 U.S.C. § 2000bb-1(c) (emphasis added).

persons and religious entities. Adopting DOJ's interpretation would require this Court to effectively rewrite the statute by replacing the word "person" with the phrase "individual or religious entity." But, "[o]f course, those are not the words that Congress wrote, and this Court is not free to 'rewrite the statute' to the Government's liking." *Nat'l Ass'n of Mfrs. v. DOD*, 583 U.S. 109, 123 (2018) (quoting *Puerto Rico v. Franklin Cal. Tax–Free Trust*, 579 U.S. 115, 130 (2016)). Because Safehouse is a "person," it has rights under RFRA.

DOJ likewise ignores the broad statutory definition of the term "person" in the Dictionary Act (1 U.S.C. § 1). The Supreme Court held in *Hobby Lobby* that the Dictionary Act's definition of "persons"—which includes "***corporations***, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals"—provided the proper touchstone for interpreting RFRA. 573 U.S. at 707-708 ("We see nothing in RFRA that suggests a congressional intent to depart from the Dictionary Act definition[.]"). Here, as in *Hobby Lobby*, "the Dictionary Act provides a quick, clear, and affirmative answer to the question whether the compan[y] involved in th[is] case[] may be heard." 573 U.S. at 708. Safehouse is a "person" within the meaning of RFRA because it is a "corporation."

DOJ's repeated suggestion (*e.g.*, DOJ Br. 1, 2, 8, 9, 11, 12, 13) that the term "person" excludes "non-religious entities" is squarely foreclosed by *Hobby Lobby*. As the Court explained, "No known understanding of the term 'person' includes

*some* but not all corporations." *Id.* at 708 (emphasis in original). Yet that is precisely how DOJ urges this Court to interpret RFRA. The *Hobby Lobby* Court elaborated, "no conceivable definition of the term [person] includes natural persons and nonprofit corporations, but not for-profit corporations." *Id.* at 708; *see id.* at 708 n.20 ("Not only does the Government concede that the term "persons" in RFRA includes nonprofit corporations, it goes further and appears to concede that the term might also encompass other artificial entities, namely, general partnerships and unincorporated associations."). So, too, here. No conceivable definition of the term "person" includes some but not all nonprofit corporations engaged in religious exercise. DOJ's failure even to mention the broad definition of "persons" set forth in the Dictionary Act or the Supreme Court's conclusion that RFRA incorporates that definition is fatal to its arguments.

The text of RFRA—as interpreted in *Hobby Lobby*—also confirms that the District Court erred by relying on Title VII's materially different standards when assessing whether Safehouse is a "person" under RFRA. (Safehouse Br. 20-21, 26-27.) Unlike RFRA, which applies to all persons engaged in religious exercise, the Title VII exemption on which the District Court relied does not apply to all persons, but rather applies only to "religious" entities. 42 U.S.C. § 2000e–1(a). The fact that the two statutes (which address entirely different problems) use materially different language confirms that the Title VII framework is inapposite. *See Hobby Lobby*,

573 U.S. at 716-17 ("If Title VII and similar laws show anything, it is that Congress speaks with specificity when it intends a religious accommodation not to extend to for-profit corporations.").

DOJ argues that "Safehouse does not challenge the district court's conclusion that Safehouse—which was not founded for religious purposes and holds itself out to the public as a nonreligious entity—would not qualify as a religious corporation under Title VII."  (DOJ Br. 22.)  But Safehouse does not argue it qualifies for an exemption from Title VII, because that is irrelevant under RFRA, and Safehouse is not seeking a Title VII exemption.  Congress deliberately established RFRA to apply more broadly than the Title VII exemption:  RFRA is intended *to protect all persons* from governmental actions that burden religious exercise, whereas Title VII is a limited *exemption* from an antidiscrimination employment statute available only to certain classes of private, religious employers.

Instead of addressing *Hobby Lobby*'s controlling interpretation and application of the term "person,' DOJ relies on an out-of-circuit district court opinion in *Holy Land Foundation for Relief & Development v. Ashcroft*, 219 F. Supp. 2d 57 (D.D.C. 2002).  (DOJ Br. 11-12.)  The district court opinion in *Holy Land Foundation* is the weakest of reeds; it is neither binding nor persuasive.  Notably, the holding for which DOJ cites the case was *not* affirmed on appeal: "Effectively then, the [district] court held that such a corporation is not 'a person' within the

meaning of 42 U.S.C. § 2000bb-1(c). . . . That may be, *but we do not so decide today*." *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 167 (D.C. Cir. 2003) (emphasis added).   More important, the holding conflicts with the Supreme Court's subsequent interpretation of RFRA in *Hobby Lobby*, which does bind this Court.   *See Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312 (1994) (observing that "once the [Supreme] Court has spoken, it is the duty of other courts to respect that understanding of the governing rule of law").   DOJ's near-exclusive reliance on *Holy Land Foundation* confirms that its strained interpretation of RFRA lacks any basis in law or precedent.

Finally, DOJ urges this Court to disregard *Hobby Lobby*'s interpretation of RFRA on the ground that "[n]othing in RFRA's text … suggests that a non-religious entity can engage in the exercise of religion."  (DOJ Br. 12.)  *Hobby Lobby* rejected the argument that "these corporations are not protected by RFRA because they cannot exercise religion."  573 U.S. at 709.  It observed that "neither HHS nor the dissent . . . provides any persuasive explanation for this conclusion.  If, as *Braunfeld* [*v. Brown*, 366 U.S. 599 (1961)] recognized, a sole proprietorship that seeks to make a profit may assert a free-exercise claim, why can't Hobby Lobby, Conestoga, and Mardel do the same?"  *Hobby Lobby*, 573 U.S. at 710.  The same point holds true here: If individuals and commercial entities can exercise religion, and "religious" nonprofits can do so, then nothing in RFRA excludes from the "exercise of religion"

nonprofit corporations regardless of whether they are expressly incorporated as "religious entities."

Congress has mandated that RFRA "must be 'construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of th[e statute] and the Constitution." *Davis*, 82 F.4th at 211 (quoting 42 U.S.C. § 2000cc–3(g)). DOJ's arguments are wholly inconsistent with this mandate.[3]

**B.    DOJ Cannot Limit RFRA's Protections by Ignoring RFRA's Text and Focusing Instead on RFRA's Legislative History and Purpose.**

Lacking any support in text, DOJ resorts to a strained and cursory characterization of RFRA's legislative history and purpose. (DOJ Br. at 11-13.) But "the text of a law controls over purported legislative intentions unmoored from any statutory text," so courts "may not 'replace the actual text with speculation as to Congress' intent." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2454 (2024) (quoting *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022)); *In re Phila. Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010). Indeed, this Court explained in its prior opinion in this case that "legislative history is not

---

[3] Last year, in *Davis*, this Court articulated what a RFRA plaintiff must plead to "state a prima facie RFRA claim"—i.e., "that the government (1) substantially burdened (2) a sincere (3) religious exercise." *Davis*, 82 F.4th at 211. The Court tellingly did not mention the "person" requirement in laying out these elements. And that makes sense: under the Supreme Court's expansive definition of that term in *Hobby Lobby*, it is hard to imagine a scenario in which any conceivable plaintiff is not a qualified "person" under RFRA.

the law," so "we do not inquire what the legislature meant; we ask only what the statute means." *United States v. Safehouse*, 985 F.3d 225, 238-39 (3d Cir. 2021) (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018)).  Because "the statute's plain text covers" all persons—including Safehouse—this Court should "look no further." *Id.* at 239.  DOJ cannot use RFRA's legislative history to limit the language enacted by Congress.

In any event, the legislative history DOJ cites does not support its claims. According to DOJ, "the House and Senate Reports accompanying RFRA mention protecting 'religious institutions'"—"with no mention of protecting non-religious entities"—so the word "persons" should be limited to encompass only the former. (DOJ Br. 11.)  That does not follow.  A robust concern for protection of religious institutions does not preclude protection of natural persons or other corporate entities.  And nothing in the legislative history suggests that Congress affirmatively intended to limit RFRA's protections. *See Hobby Lobby*, 573 U.S. at 708.

DOJ fares no better invoking RFRA's purpose.  As this Court has explained, "the purposes of RFRA are to provide broad religious liberty protections." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 303 (3d Cir. 2016).  And RFRA itself contains a legislative statement of purpose, which lists two statutory goals. *First*, Congress declared that RFRA's purpose is "to restore" the Free Exercise Clause's "compelling interest test"—which the Supreme Court had overturned a few years earlier in

*Employment Division v. Smith*, 494 U.S. 872 (1990)—and to guarantee its application in *all cases* where free exercise of religion is substantially burdened." 42 U.S.C. § 2000bb(b)(1) (emphasis added).  By clarifying that RFRA is intended to apply in "*all* cases" in which the government burdens religious exercise, Congress rejected the view that RFRA only protects certain persons in certain cases from substantial burdens on religious exercise.  *Second*, Congress reenforced that conclusion by declaring that RFRA's second purpose is "to provide a claim or defense *to persons* whose religious exercise is substantially burdened by government." *Id.* § 2000bb(b)(2) (emphasis added).  Congress's deliberate use of the term "persons" in its statement of purpose for RFRA underscores the legislative intent and purpose of broadly protect all persons engaged in religious exercise.

Quite simply, Safehouse is a "person" within the plain meaning and legislative intent of RFRA.  The District Court erred in concluding otherwise.

### C.    DOJ's Attempt to Limit RFRA's Protections to "Religious Entities" Conflicts with Supreme Court Precedent.

The Supreme Court has repeatedly held "that a corporate entity may assert a religious liberty claim under RFRA or the First Amendment based on the commitments of its organizers."  (Safehouse Br. 23-24.)  DOJ nonetheless asserts that Safehouse "cites no case holding that a non-religious entity can engage in the exercise of religion under RFRA or the Free Exercise Clause."  (DOJ Br. 9.)

That assertion is based on the false premise that RFRA protects only subcategories of "persons."  It also ignores precedent, and it reinforces that DOJ's approach to distinguishing religious and non-religious entities is arbitrary and imprecise.  Take the recent Supreme Court cases: *Hobby Lobby*, and *Masterpiece Cakeshop*.  In each case, the party seeking to vindicate its RFRA or First Amendment rights was a corporation that lacked traditional indicia of being a "religious entity" but nonetheless asserted viable claims based on the beliefs of its owners.  One of the plaintiffs in *Hobby Lobby* was a closely held for-profit that operated crafts stores and employed more than 13,000 people.  573 U.S. at 701-703.  The other was a for-profit business that sold specialty wood products.  The plaintiff in *Masterpiece Cakeshop* was a for-profit bakery.  584 U.S. at 625-626.  A bakery, specialty woods business, and hobby-and-crafts store are hardly "religious entities," but the Supreme Court still found each to be "persons" with rights under RFRA and the First Amendment. The same is true here.

To overcome that conclusion, DOJ asserts that the "corporations in those cases were governed by documents that required those corporations to operate consistently with their founders' religious beliefs."  (DOJ Br. 10.)  This assertion flies in the face of fact and law.  DOJ does not identify a statement of religious purpose in the corporate formation documents of *any* of the business in *any* of those cases.  Indeed, *none* of the three companies whose RFRA claims were deemed viable

in *Hobby Lobby* had statements of religious purpose enshrined in their articles of incorporation and corporate bylaws.  Rather, the religious character of Conestoga Wood Specialties could be gleaned only from "[t]he company's 'Vision and Values Statements'" relating to the corporate founders' "Christian heritage."  573 U.S. at 700-01; *see Conestoga Wood Specialties Corp. v. Sebelius*, 917 F. Supp. 2d 394, 403 (E.D. Pa. 2013) ("Conestoga's Articles of Incorporation are silent as to any religious purpose or belief."), *aff'd sub nom.*, *Conestoga Wood Specialties Corp. v. Sec'y of U.S. Dep't of Health & Hum. Servs.*, 724 F.3d 377 (3d Cir. 2013), *rev'd and remanded sub nom.*, *Hobby Lobby*, 573 U.S. 682.  And the other companies' claims in *Hobby Lobby* were predicate on a "statement of purpose" and a pledge by the board of directors to operate the business "in a manner consistent with Biblical principles"—not on corporate formation documents.  *Hobby Lobby*, 573 U.S. at 703.

DOJ has itself acknowledged that, after *Hobby Lobby*, RFRA protections need not be predicated on corporate formation documents.  In *Mersino Management Co. v. Sebelius*, the trial court denied injunctive relief on a RFRA claim because "Mersino Management's Articles of Incorporation do not mention a religious purpose [and] Mersino Management is not a religious organization."  No. 13-CV-11296, 2013 WL 3546702, at *11 (E.D. Mich. July 11, 2013), *rev'd and remanded sub nom.*, *Mersino Mgmt. Co. v. Burwell*, No. 13-1944, 2015 WL 9850709 (6th Cir. Jan. 28, 2015).  After *Hobby Lobby*, the Sixth Circuit reversed—an outcome the

14

government agreed was required by *Hobby Lobby*. *See Mersino Mgmt. Co.*, No. 13-1944, 2015 WL 9850709, at *1 (6th Cir. Jan. 28, 2015) ("Based upon the Supreme Court's opinion in [*Hobby Lobby*] the government now agrees with plaintiffs that the district court's denial of a preliminary injunction should be reversed. It moves this court to reverse the district court's order and remand.").

DOJ's discussion of *Masterpiece Cakeshop* and *303 Creative* likewise confirms that the grounds for the religious freedom claims in those cases were the individual religious beliefs of the corporations' owners, not any statement of religious purpose in a corporate formation document. (DOJ Br. 13-17.)[4] DOJ's feeble attempts to distinguish these cases simply confirm that settled law permits Safehouse to assert RFRA and First Amendment claims based on the religious commitments of its board members—as expressed in its statement mission statement, which provides that "[t]he leaders and organizers of Safehouse are

---

[4] While DOJ is correct that *303 Creative* sustained a Free Speech challenge, that misses the point. There, the named plaintiff was a for-profit company, 303 Creative, not an individual. The predicate for that website design company's religious beliefs was the business *owner's* views that providing certain services conflicted with her own religious beliefs. *303 Creative*, 600 U.S. at 580, 582, 589, 595 (explaining that the lawsuit involved a request for an injunction she sought an injunction by an LLC seeking "to prevent the State from forcing [the LLC's sole member] to create wedding websites celebrating marriages that defy *her beliefs*," including the "sincerely held religious conviction" that "marriage is a union between one man and one woman" (emphasis added)). Both religious speech and religious exercise are founded on religious beliefs; protection for belief is equally essential to both. DOJ points to nothing in 303 Creative's foundational documents adopting the owner's religious beliefs as that of the company.

motivated by the Judeo-Christian beliefs ingrained in us from our religious schooling, our devout families and our practices of worship. At the core of our faith is the principle that preservation of human life overrides any other considerations." Appx78.

DOJ's proposed basis for distinguishing between religious and non-religious entities—based on whether their corporate formation documents mention a religious purpose—is also arbitrary and unworkable. Faced with the challenge that no "Catholic hospitals, Muslim haberdasheries, and Jewish summer camps . . . will ever be able to vindicate their religious rights unless their article of incorporation explicitly states they are incorporated for religious purposes" (Safehouse Br. 29), DOJ speculates that "[i]nherently religious entities like these examples very likely will have articles of incorporation or bylaws that identify a religious purpose." (DOJ Br. 20.) DOJ provides no support for this assertion—and there is no reason for this Court to accept it. A clothing store, a camp, or a hospital is no more "inherently religious" than an overdose prevention site. According to DOJ, the question of whether Catholic hospitals, Muslim haberdasheries, and Jewish summer camps are protected by RFRA would turn on whether their corporate formation documents "identify a religious purpose" (*id*.), rather than whether the government is substantially burdening their and their owners' "exercise of religion." 42 U.S.C. § 2000bb-1(a). Nothing suggests that Congress intended for RFRA's protection to

extend only to corporations that include certain words in their corporate formation documents.

### D. DOJ's Argument that Safehouse's Claims Fail on the Ground that Safehouse Is Not a "Religious Entity" Conflicts with the Pleading Standards and the Plausible Allegations.

DOJ's final argument on appeal is that Safehouse's claims fail because Safehouse pled that it is not a "religious entity." In fact, in a 25-page brief, DOJ mentions this supposedly fatal concession nearly a dozen times. (DOJ Br. 1, 5, 9, 11, 15, 17, 19, 20, 21, 22, 25.) But DOJ tellingly declines to quote the actual averment in full. Instead, it plucks the allegation out of context and views it in isolation. Here is what Safehouse actually pled:

> At the core of all board members' faith is the principle that the preservation of human life is paramount and overrides any other considerations. Although Safehouse is not itself a religious entity or organization, its founders' and leaders' beliefs are those of the corporation, and the pursuit of its mission and conduct of its business will implement those beliefs. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014)

Appx211 (¶126). As with the corporate plaintiffs in *Hobby Lobby*, Safehouse has explicitly alleged that the religious beliefs of its board *are Safehouse's beliefs* and that Safehouse will "implement those beliefs" in pursuing and carrying out its business, even though it is "not itself a religious entity." *Id.* These are facts, not conclusions, that must be accepted as true at the pleading stage. *See Davis*, 82 F.4th at 207-208, 211, 213 (explaining in RFRA case "[a]t the pleadings stage, a court

asks only whether the plaintiff has plausibly alleged each element of his prima facie case" and, when doing so, "must accept Plaintiffs' plausible allegations as true and draw all inferences in their favor"). Yet DOJ urges this Court to ignore them. And of course, as discussed in the preceding sections of this Reply, being a "religious entity or institution" is irrelevant to rights under RFRA and the Free Exercise clause.

Safehouse's claims do not, indeed, rest on a sole allegation. Safehouse's pleading sets forth robust, factual, and certainly plausible allegations of religious exercise. Safehouse has asserted that "a[t] the core of ***all*** board members' faith is the principle that the preservation of human overrides any other considerations" and that this principle, which is rooted in scripture, "obligate[s]" the board members "to establish and run Safehouse in accordance with these tenets." Appx211-213 (¶¶ 126, 127, 129). Shortly after its formation—and well before this lawsuit was filed— Safehouse adopted and published a mission statement announcing that its leaders and organizers seek to carry out "Judeo-Christian beliefs ingrained in us from … religious schooling … devout families and our practices of worship." App78; Appx103 (¶9). Consistent with this mission statement—which is materially indistinguishable from the "vision and values statement" credited in *Hobby Lobby*— Safehouse has further alleged that its board members are compelled and motivated by these religious beliefs to establish and run Safehouse as an expression and exercise of their faith. Appx213-214 (¶¶129-132). These allegations plausibly

establish that Safehouse is a person engaged in the exercise of religion within the meaning of RFRA.

DOJ's arguments ignore the Civil Rule 12(b) pleading standards, as reaffirmed by this Court in *Davis* (which DOJ similarly ignores). DOJ argues that these allegations—and Safehouse's mission statement, which DOJ itself attached to its initial complaint (Appx103 ¶9)—"cannot negate Safehouse's judicial admission that it is not a religious entity, see Appx211, which is binding on Safehouse." (DOJ Br. 19.) But that myopic reading of Safehouse's supposed "judicial admission" cannot be reconciled with what Safehouse actually pled, as explained above. Indeed, while DOJ argues that "[s]tatements regarding the religious beliefs of a secular corporation's board members do not suggest that the corporation itself is religious or engages in the exercise of religion" (*id.*), that is precisely what Safehouse has plausibly alleged. Indeed, in the same paragraph as the supposed admission, Safehouse alleged that its "founders' and leaders' beliefs *are those of the corporation, and the pursuit of its mission and conduct of its business will implement those beliefs.* Appx211 ¶ 126 (emphasis added). Safehouse is not seeking to run from the allegation in paragraph 126 of its pleading, as DOJ's argument suggests, nor is it relying on its mission statement to contradict its allegations. Rather, the very allegation that DOJ mischaracterizes as some sort of fatal admission actually plausibly establishes violations of RFRA and the First

Amendment based on the religious commitments of its board members, which are central to Safehouse's purpose and operations.

DOJ urges this Court to second-guess or disregard Safehouse's allegations by questioning whether "the majority of Safehouse's current board shares the religious motivations ascribed to the four board members discussed in Safehouse's second amended answer and counterclaims" and inquiring into the ways in which "the composition of Safehouse's Board has fluctuated over time." (DOJ Br. 17-18)  But Safehouse has alleged that its "board members are adherents of religions in the Judeo-Christian tradition" and that "[a]t the core of **all** board members' faith is the principle that the preservation of human life is paramount and overrides any other considerations" and that "its founders' and leaders' beliefs are those of the corporation, and the pursuit of its mission and conduct of its business will implement those beliefs."   Appx210-211 (¶¶124-126) (emphasis added).   The specific allegations about four of those board members were explicitly described as "examples" of Safehouse's faith-based board and in no ways undermine Safehouse's claims. *Id.* (¶124).  Nor has Safehouse ever modified its Statement of Purpose. DOJ's fact-bound speculation about the supposed religious beliefs of individual board members and post-litigation changes to the board's composition raise quintessential questions of fact that—if pertinent at all—are not susceptible to resolution at the pleading stage.

**E.    DOJ Fails to Address the Authority of Safehouse's Board under Pennsyvlania Corporate Law and Safehouse's Arguments Concerning Its Tax Exempt Status.**

Safehouse has demonstrated that its board is empowered by Pennsylvania law to establish Safehouse's religious beliefs.  (Safehouse Br. 29-33.)  DOJ barely engages with this argument or Pennsylvania corporate law.  (DOJ Br. 17-18.)  DOJ's only rejoinder is that Safehouse "does not allege that its board of directors has ever amended Safehouse's Articles of Incorporation or Bylaws to state a religious purpose or acted to require Safehouse to operate consistent with the religious beliefs of its board" and that Safehouse is wrong that "the religious motivations of Safehouse board members are properly attributed to Safehouse itself."  (*Id.*)  DOJ points to no case or authority suggesting that Safehouse is not a "person" under RFRA unless it amends its corporate formation documents "to state a religious purpose"—and *Hobby Lobby*, *Masterpiece Cakeshop*, and *303 Creative* confirm that no such requirement exists, as explained above.  And contrary to DOJ's argument, Safehouse has in fact alleged that its beliefs are the religious beliefs of its board and that it will implement those beliefs by pursuing its life-saving, charitable mission in Philadelphia.  Appx211 (¶126).  Pennsylvania law—and Safehouse's corporate formation documents—plainly authorize Safehouse's board to make that decision for Safehouse.  (Safehouse Br. 30-31.)  And DOJ's repeated suggestion that

charitable and religious purposes are mutually exclusive conflict with well settled Pennsylvania law.  (*Id.* at 31-32.)

That suggestion also conflicts with federal law.  Under Internal Revenue Code Section 501(c)(3), the term "charitable" is a broad umbrella term that encompasses other tax-exempt purposes, including the advancement of religion.  (*Id.* at 33-34.) As a result, the District Court erred by concluding that Safehouse's claims failed because that "Safehouse's Form 1023 applying for tax-exempt status from the Internal Revenue Service" did not "set forth any religious activity or purpose and makes no reference to religion."  (Appx6; Safehouse Br. 34-35.)  DOJ ignores this argument entirely—and does not even attempt to defend the District Court's conclusion that Safehouse's Form 1023 somehow precluded Safehouse from stating a plausible RFRA claim.  DOJ's silence confirms that the District Court's reasoning is unsupported by law.

## II.    DOJ Does Not Dispute that Safehouse Adequately Alleged the Remaining Elements of a Plausible RFRA or First Amendment Claim.

"To state a prima facie RFRA claim," Safehouse was required to plausibly allege only "that the government (1) substantially burdened (2) a sincere (3) religious exercise."  *Davis*, 82 F.4th at 211.  Safehouse did just that.  In response, DOJ has put all its eggs in the third basket (i.e., "religious exercise").  It does not—and cannot at this stage of the case, at least—dispute the sincerity of Safehouse's beliefs.  And it has not responded to any of Safehouse's arguments demonstrating that its religious

exercise is substantially burdened by DOJ's threatened prosecution. (Safehouse Br. 45-47.) Accordingly, the only issue for this Court to address concerning Safehouse's RFRA claim are whether Safehouse adequately alleged that it is engaged in religious exercise, which has been shown in Safehouse's opening brief and in Section I of this reply. Because DOJ does not dispute the other elements of Safehouse's claim, this Court should reverse and remand for discovery and further proceedings on Safehouse's RFRA claim.

The same outcome is warranted with respect to Safehouse's First Amendment claim. Safehouse demonstrated that it had plausibly stated a claim under the "the applicable framework for assessing alleged violations of the Free Exercise Clause of the First Amendment." (Safehouse Br. 47-53.) Once again, DOJ does not respond to any of Safehouse's arguments. (DOJ Br. 22-23.) Instead, it rests entirely on its circular argument that Safehouse cannot engage in the exercise of religion because it is not a religious entity—*i.e.*, its RFRA argument. (*Id.*) DOJ offers no alternative basis for this Court to affirm. Accordingly, this Court should remand for discovery and further proceedings on that claim as well.

## III.    José Benitez Has Standing to Appeal

Mr. Benitez was sued by DOJ in its underlying declaratory judgment action. In response, he filed an answer in which he asserted as an affirmative defense that "application of Section 856 to Safehouse is barred by RFRA." Appx108 (¶3). The

District Court's underlying order rejecting Safehouse's RFRA claims necessarily rejected Mr. Benitez's sole remaining affirmative defense in the underlying action. He is thus aggrieved by the District Court's order on appeal, which dismissed not only Safehouse's counterclaims but also the entire case. *See* Appx3 ("Counterclaim Defendant United States of America's Motion to Dismiss (ECF 211) is **GRANTED** and this action is hereby **DISMISSED**. The Clerk of Court is requested to mark this case closed."). DOJ does not explain why it believes this does not suffice to render Mr. Benitez a proper appellant in this case.[5]

## IV.    The District Court Erred in Denying Leave to Amend.

In its opposition to DOJ's motion to dismiss, Safehouse expressly asked the District Court to permit it to amend its counterclaims in the event it dismissed the remaining RFRA and First Amendment claims. (Dkt. 215 at 47.) Without addressing this request to amend, the District Court dismissed the entire action and directed the Clerk of Court to close the case, thus effectively denying leave to amend. Appx3. This was error, as Safehouse explained in its opening brief. (Safehouse Br.

---

[5] In any event, Mr. Benitez is also appropriately named as a nominal appellant in this appeal for purposes of seeking a writ of certiorari from this Court's prior opinion on DOJ's declaratory judgment claims in the event this Court rules against Safehouse in this appeal (and it should not). *Mercer v. Theriot*, 377 U.S. 152, 153-54 (1964) ("We now 'consider all of the substantial federal questions determined in the earlier stages of the litigation . . . , for it is settled that we may consider questions raised on the first appeal, as well as 'those that were before the court of appeals upon the second appeal." (internal quotations and citations omitted)); *Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251, 258-59 (1916).

53-54.) This Court should accordingly at least remand with instructions to grant leave to amend—or at minimum remand the case for consideration of whether such leave should be granted—if this Court were to affirm the Rule 12(b)(6) dismissal of Safehouse's RFRA and First Amendment claims (which it should not).

DOJ's suggestion that Safehouse was required to file a motion for leave to amend—and attach a proposed amended complaint—*after* the Court had dismissed and closed the case is meritless. (DOJ Br. 25) Here, the District Court did not provide any basis for its decision to decline leave to amend—it did not fault Safehouse for declining to file a motion to amend or attached a proposed pleading. It said nothing, perhaps because its mistaken rationale for the dismissal would seemingly not be overcome by any plausible amendment. In these circumstances, the court's "outright refusal to grant the leave without any justifying reason" warrants at least a remand for the District Court to address this issue in the first instance. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

## CONCLUSION

This Court should reverse the District Court's order and remand for further proceedings.

November 25, 2024                    Respectfully submitted,

                                     **DLA PIPER LLP (US)**

                                     By:  */s/ Ilana H. Eisenstein*
                                     Ilana H. Eisenstein
                                     Ben C. Fabens-Lassen
                                     One Liberty Place
                                     1650 Market Street, Suite 5000
                                     Philadelphia, Pennsylvania 19103-7300
                                     Tel:    215.656.3300

                                     **AIDS LAW PROJECT OF
                                     PENNSYLVANIA**

                                     Ronda B. Goldfein
                                     Adrian M. Lowe
                                     1211 Chestnut Street, Suite 600
                                     Philadelphia, Pennsylvania 19107
                                     Tel:    215.587.9377

                                     **LAW OFFICE OF PETER
                                     GOLDBERGER**
                                     Peter Goldberger
                                     P.O. Box 645
                                     Ardmore, Pennsylvania 19003
                                     Tel:    610.649.8200

                                     **SETH F. KREIMER, ESQUIRE**
                                     Seth F. Kreimer (PA Bar No. 26102)
                                     3501 Sansom Street
                                     Philadelphia, Pennsylvania 19104
                                     Tel:    215.898.7447

                                     *Attorneys for Appellants Safehouse and
                                     José Benitez*

## CERTIFICATION OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), Fed R. App. P. 28(a)(10), and Local R. 31.1, I certify the following:

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,139 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in Times New Roman 14-point font using Microsoft Word 2016.

3.    This brief complies with the electronic filing requirements of Local R. 31.1(c) because the text of the electronic brief is identical to the text in the paper copies and because Windows Defender Antivirus was run on the file containing the electronic version of this brief and no viruses were detected.

November 25, 2024               By:  */s/  Ilana H. Eisenstein*